**UNITED BLACK FUND, INC., Plaintiff,**

v.

**Robert E. HAMPTON, Chairman, U. S. Civil Service Commission, et al., Defendants.**

Civ. A. No. 1816–72.

United States District Court,
District of Columbia.

Nov. 24, 1972.

Wilhelmina Jackson, Washington, D. C., for plaintiff.

Thomas G. Corcoran, Jr., Asst. U. S. Atty., Washington, D. C., for defendant Hampton.

John S. Koch, Washington, D. C., for defendants United Way and United Givers Fund.

## MEMORANDUM—ORDER

GASCH, District Judge.

The United Black Fund, Inc., plaintiff in this action, is seeking from this Court injunctive and declaratory relief concerning charitable solicitation privileges within federal installations. The defendants, Robert E. Hampton, Chairman of the United States Civil Service Commission (the Chairman), United Givers Fund (UGF), and United Way of America, Inc. (United Way), have filed motions to dismiss the complaint or in the alternative for summary judgment. Plaintiff has filed an opposition to these motions. The Court has, by Order of October 11, 1972, denied plaintiff's motion for a preliminary injunction, and the defendants' motions to dismiss or in the alternative for summary judgment are now on for consideration.

The facts of this case as set forth in the parties' 9(h) statements, in the complaint, in the points and authorities filed in support of defendants' motions, in the plaintiff's opposition thereto, and in the various supporting affidavits are undisputed. These facts are as follows:

Plaintiff, a nonprofit charitable corporation organized to raise funds for local voluntary health and welfare agen-

cies serving the needs of the black inner-city population of Washington, D. C., applied on January 28, 1971, to the Chairman for solicitation privileges in the Combined Federal Campaign, an annual fund drive carried on at federal installations in which a number of different charitable groups participate. The Chairman denied the request by a letter dated March 31, 1971. He explained that the Greater Washington Area was a "federated community," meaning that a community chest or united fund belonging to United Way was participating in the Campaign here as an umbrella group for any local agencies wishing to receive funds from the drive. He referred plaintiff to Section 3.551 of the *Manual on Fund Raising Within the Federal Service (Fund-Raising Manual)*, for this regulation concerning participation by federations of local voluntary agencies. The Chairman advised plaintiff that it might be able to secure Campaign funding for its member agencies by applying on their behalf to UGF, the Washington area united fund, and the Health and Welfare Council (HWC).[1]

Plaintiff's President, Calvin Rolark, replied by letter of April 22, 1971, to the Chairman, alleging that the cited regulation was discriminatory because United Way had been "under attack" in several cities other than Washington for discriminatory disbursement policies and that UGF had recently released a Task Force report of its own which "highlighted" past failures of UGF in meeting "certain critical community needs." Mr. Rolark emphasized that plaintiff sought to solicit alongside UGF rather than to supplant it. Finally, he asked for a "hearing with you on this request for reconsideration."

The Chairman replied on May 10, 1971, saying that he believed Mr. Rolark's letter contained no new evidence warranting a change in his original decision but offering to meet with Mr. Ro-

lark to discuss the matter. The meeting took place on June 10, 1971, attended by Mr. Rolark and his counsel and by Chairman Hampton and his assistant, Irving Kator. According to the parties' Statements of Fact as to Which There is No Genuine Issue and the various supporting affidavits, the meeting focused on charges that the "federated communities" regulation was discriminatory and that UGF, HWC, and the American Red Cross were guilty of discriminatory practices. No claim is made by any party that documentation of the charges was furnished by plaintiff's representatives.

On August 3, 1971, Chairman Hampton reported by letter to Mr. Rolark that he had investigated the charges made at the meeting and that his investigation revealed no grounds for granting plaintiff the solicitation privileges sought. He supplied specific figures on the racial composition of important policy-making bodies within HWC and UGF, and of the Citizens Goal and Allocations Committee; the latter is a body made up of representatives from UGF, HWC, and the American Red Cross, responsible for recommending amounts to be distributed to the three participating organizations. The Chairman also reported on the percentage of funds allocated by the HWC which went for services to black persons, and he detailed HWC regulations requiring member agencies to see that their governing boards reflect the racial makeup of the surrounding communities.

In summary, there appears to be no genuine issue of material fact. There is no dispute about what regulations the Chairman applied and how he applied them. Neither is there a dispute about the nature of the evidence on which he based his refusal to change his original denial of solicitation privileges to plaintiff. Plaintiff's contention appears to be that the Chairman should have made a different decision on the evidence he

---

1. This is an organization, allied with UGF, which determines eligibility of local health and welfare agencies for UGF funding and which allocates funds among those determined to be eligible.

did consider or that he should have compiled a more extensive record for his decision by allowing plaintiff to cross-examine representatives from UGF and HWC in a hearing on plaintiff's application for reconsideration. Hence, summary judgment is appropriate and the Court will proceed to rule on defendants' motions on the basis of the entire record herein.

It should be emphasized at the outset that the essential objective which plaintiff seeks through declaratory and injunctive relief is not simply to gain solicitation privileges in the Combined Federal Campaign for the benefit of its member agencies. If this were the objective sought, the complaint would properly be dismissed on the ground of failure to exhaust administrative remedies; for as the record shows, plaintiff has at no time applied for solicitation privileges in the 1973 Campaign, either as part of UGF, or as an independent federation of charities. There is also nothing in the record to show that, upon timely application to the HWC, plaintiff would not be permitted to operate *as a federated group* of charities within UGF.

■■ Plaintiff seeks coequal status with UGF in the 1973 Combined Federal Campaign, which began October 12, 1972. It is clear from Chairman Hampton's letters to plaintiff of March 31, 1971, and August 3, 1971, and from his position in this action that an application to the Chairman for participation in the 1973 Campaign on the indicated terms would be denied as being inconsistent with the "federated communities" rule, set forth in Section 3.551 of the *Fund-Raising Manual*. Plaintiff cannot, then, secure the relief it seeks through administrative channels; and it is well settled that an action should not be dismissed for failure to exhaust administrative remedies when an attempt to gain the desired relief from the agency in question would obviously be a futile act. Lodge 1858, American Federation of Government Employees v. Paine, 141 U.S.App.D.C. 152, 436 F.2d 882, 896 (1970); Ogletree v. McNamara, 449 F.2d 93, 99 (6th Cir. 1971). Hence, plaintiff's allegation that the regulations as published by the Chairman in the *Fund-Raising Manual* and as applied by him are an abuse of his discretion is not barred from the Court's consideration by the exhaustion doctrine.

■■ It is equally clear that plaintiff's claim that it was deprived of due process when Chairman Hampton refused to grant a full-scale adjudicative hearing on its application for reconsideration of the original denial of solicitation privileges is not barred by the exhaustion doctrine. Neither is this issue moot. Although the denial concerned the plaintiff's application for participation in the 1972 Campaign, the question of the right of an applicant for solicitation privileges in the Combined Federal Campaign to an adjudicative hearing on its application would seem to fall within the "continuing controversy" exception to the mootness doctrine. City of Lafayette v. FEC, 454 F.2d 941 (D.C.Cir. 1971); Friend v. United States, 128 U.S.App.D.C. 323, 388 F.2d 579, 581 (D.C.Cir. 1967). Moreover, the substantive soundness of the decision which Chairman Hampton reported in his letter of August 3, 1971, is still very much alive, since it necessarily affects the rights of the litigants in the instant case.[2]

■ The only claim which is beyond the jurisdiction of this Court to determine is the allegation that UGF is "at present" discriminating against black agencies. For this claim, the exhaustion doctrine would seem to apply. If plaintiff has factual evidence of discriminatory policies and practices *now* being carried out by UGF and United Way, it should bring them to the attention of Chairman Hampton as it sought to do in

2. The contention that, contrary to Chairman Hampton's decision, defendants UGF and United Way were guilty of racial discrimination is inferentially raised in Paragraph 11 of the Complaint. *See* Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

the case of allegedly discriminatory practices in 1971.

██ In summary, then, the Court can reach the merits of all of plaintiff's claims except the one expressly excepted above; and since violations of constitutional rights are alleged, the Court will not abstain from entertaining jurisdiction as urged in defendant Hampton's motion to dismiss. As for the government defendant's sovereign immunity defense, the Court does not find the cited cases on point or the argument persuasive.

The issues to be decided in ruling on the defendants' motions are as follows:

1. Is Executive Order 10927 an unconstitutional delegation of authority?

2. Are the Chairman's regulations an abuse of his discretion insofar as they prohibit plaintiff from participating in the Combined Federal Campaign except as a member of UGF and insofar as they delegate discretionary authority to private parties?

3. Was plaintiff denied due process when the Chairman refused to grant an adjudicative hearing on plaintiff's application for reconsideration of the original denial of solicitation privileges?

4. Was there substantial evidence to support the Chairman's determination that the allegations made by plaintiff against, *inter alia,* defendants United Way and UGF, were not factually supported and did not warrant altering the solicitation arrangements in the Combined Federal Campaign to permit plaintiff's participation on the terms it requested?

██ The first issue can be dealt with briefly. Executive Order 10927 is a delegation of authority by the President of the United States directing that the Chairman of the Civil Service Commission make arrangements to allow voluntary health and welfare agencies to solicit funds "from Federal employees and members of the armed forces at their places of employment or duty stations." Plaintiff has cited no cases in which such a delegation of *executive* authority, as distinguished from *legislative* delegations, is found invalid for lack of detailed standards, and plaintiff states no other possible basis for finding the delegation unconstitutional.[3]

██ The second issue concerns the "methods and standards by which the defendant Hampton denied the admission of plaintiff to solicit within the Federal installations," presumably a reference to the regulations set forth in the *Fund-Raising Manual* which Chairman Hampton applied (Complaint, ¶ 13). Plaintiff alleges these were an abuse of the Chairman's discretion under the Executive Order. It should be noted in connection with both this issue and the fourth issue listed above, that there is a judicial presumption of the validity of administrative action, that the burden is on a plaintiff to overcome that presumption, and that the Court will uphold such action if it has a rational basis. Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Udall v. Washington, Virginia, and Maryland Coach Co., 130 U.S.App.D.C. 171, 398 F.2d 765, 769 (1968).

Clearly the regulations as applied to plaintiff do not violate any of the express limitations on solicitation arrangements set forth in Section 2(b) of the Order; neither do the regulations appear to be an abuse of discretion in the sense of being purely arbitrary or otherwise unreasonable. The Executive Order expressly authorized the Chairman to consult with "appropriate interested persons and organizations" in making his solicitation arrangements. It is certainly reasonable, and not obviously be-

---

3. Even if a legislative delegation were involved, it is unlikely that standards such as those set forth in Executive Order No. 10927 would be found unconstitutionally indefinite. See comment on Fa-

hey v. Mallonee, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947), in Davis, Administrative Law Treatise § 2.00 (1970 Supp.).

yond the scope of the Order, for the Chairman to devise consultation procedures which tend to reduce the expenditure of Federal employees' time and energy, while allowing for consideration of applications from a broad range of health and welfare agencies in the communities in which federal installations are located. Rather than have federal officials pass on every application of the thousands of local health and welfare agencies in communities across the nation, the Chairman has provided that such applications be screened by a community chest or united fund in every community where such an organization exists. To further facilitate efficient planning, he has provided that the chests or funds themselves be screened by United Way. As the Chairman states in his affidavit, he can in his consultations with United Way "make national fund-raising arrangements applicable to all communities" (Hampton affidavit, ¶ 3). Were the Chairman to redraw the regulations so as to permit any organization which took the position that particular local needs were being neglected to solicit alongside the local united fund or community chest, the entire rationale for having a federation of local charities would be defeated.

▆▆ Certainly it would be an abuse of discretion for the Chairman to surrender all authority over the policies of United Way and its member united funds and chests,[4] but it seems clear from the record herein that this is not the case. As the Chairman's affidavit makes clear, all local agencies wishing to participate as members of a united fund or community chest in the Combined Federal Campaign must meet *independent* federal standards regarding such important matters as nondiscrimination standards, which are spelled out in the Chairman's *Manual on Fund Raising*. It is apparent from the Chairman's response to plaintiff's letter of April 22, 1972, in which it was charged that United Way and certain of its member funds were "under attack" for discriminatory policies, that the Chairman retains authority to review the policies even of those organizations which have been approved by United Way to make sure that they do in fact meet federal requirements. *Final* decision-making authority concerning eligibility of federations of local charities such as UGF does not, then, rest in a private organization. There are no cases directly on point in any jurisdiction, but there is authority for the proposition that subdelegations by federal agencies to private parties are not invalid when the federal agency or official retains final reviewing authority. R. H. Johnson & Co. v. Securities and Exchange Commission, 198 F.2d 690, 695 (2d Cir.), cert. denied 344 U.S. 855, 73 S.Ct. 94, 97 L.Ed. 664 (1952); Harwell v. Growth Programs, Inc., 315 F.Supp. 1184, 1188 (W.D.Tex.1970). Although cases concerning delegations of authority by state agencies and officials are split, a recent case in which a delegation to health planning agencies composed of volunteers was challenged upheld the delegation largely on the ground that *final* decision-making authority rested with a "quasi-public body." Simon v. Cameron, 337 F.Supp. 1380, 1381 (C.D.Calif.1970).[5] Thus, the Chairman's "methods and standards" are not an abuse of discretion on any theory of invalid subdelegation and, as indicated above, such methods and standards are a reasonable means of

---

4. Plaintiff's charge that the Chairman's "methods and standards" are an abuse of discretion can be taken to include the theory, more fully developed in plaintiff's opposition to the defendants' Motions to Dismiss or in the Alternative for Summary Judgment, that the Chairman has unlawfully redelegated his authority to defendants United Way and UGF.

5. It must be noted that all the delegation cases cited above involve delegations of power initially delegated by a legislature. There is no authority to the effect that subdelegations of federal *executive* power in circumstances like those outlined in this Memorandum are invalid.

permitting a great number of local volunteer health and welfare agencies to participate in the Combined Federal Campaign without unduly burdening the normal operations of the federal government.

■ The third issue to be decided is whether plaintiff was denied due process when Chairman Hampton refused to grant a hearing at which plaintiff's representatives could cross-examine the representatives of UGF and HWC from whom the Chairman had sought information concerning the charges of racial discrimination. There is no case directly on point as to the precise requirements of due process in a like situation; the closest would seem to be Cafeteria & Restaurant Workers Union, Local 473, AFL–CIO v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), which involved the summary exclusion of a cook from a privately operated cafeteria located at a military installation. The court found that, in the circumstances of that case, due process did not require a hearing on the exclusion, which had been ordered by the Admiral in command at the installation. It noted as one of the factors influencing its decision that the governmental function involved was that of a proprietor. Although the instant case does not involve national security considerations, it does concern an essentially proprietary function of the government. Chairman Hampton, acting on behalf of the government, has sought to make arrangements for charitable solicitations among federal employees which would keep interruptions of normal government operations to a minimum and limit the administrative burden on the government (Hampton affidavit, ¶¶ 2 and 3). In addition, *Cafeteria Workers* is analogous to the instant case insofar as there is no claim that plaintiff was denied the privilege it sought on "patently arbitrary or discriminatory grounds" such as plaintiff's religious or political affiliations. *Id.,* 898.[6]

There are, however, at least two important differences between *Cafeteria Workers* and the instant case which support the view that the plaintiff United Black Fund was not denied due process. First, the petitioner in *Cafeteria Workers* was denied even the opportunity for a meeting with the person responsible for her exclusion. Here, representatives of the plaintiff were given the opportunity to present their position to Chairman Hampton in person. After investigating the various allegations made to him, the Chairman informed them of the results of his investigation and his reasons for refusing to reconsider his original decision. Second, the petitioner in *Cafeteria Workers* was deprived of an existing interest, i. e., her employment at the installation in question. Plaintiff here has been deprived of no existing interest but only of benefits it hoped it might acquire.[7] It should also be pointed out again that it is not participation in the Combined Federal Campaign by plaintiff and the agencies it funds which is sought here; rather, it is the opportunity to solicit funds in government offices and installations on the terms demanded by plaintiff.

---

6. Plaintiff's claims of racial discrimination go not to its own exclusion but to the allegedly unfair treatment of black agencies by UGF and United Way.

7. *Cf.* Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (June 29, 1972). There the court observed that "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person *has already acquired* in specific benefits. * * * To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it." *Id.,* at 576, 92 S.Ct. at 2708 (emphasis added). This, of course, is different from the traditional distinction between rights and privileges, a distinction which has been somewhat eroded by recent case law. *See, e. g.,* Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); Goldberg v. Kelly, 397 U.S. 254, 262, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

Considering these circumstances, i. e., the proprietary nature of the governmental action involved here, the nature of the plaintiff's interest, and the extent to which plaintiff was allowed to present its case to Chairman Hampton, the Court finds that plaintiff was not denied due process when the Chairman refused to grant an adjudicative hearing on the plaintiff's request for reconsideration of his decision to deny solicitation privileges on the terms specified by plaintiff.[8]

Finally, the Court must consider whether there was substantial evidence to support the Chairman's determination that the operations of UGF, which had been approved by United Way, were not in fact racially discriminatory.[9] The Court must look at the whole record which was before the Chairman in deciding whether his decision should be upheld. Universal Camera Corporation v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). According to affidavits filed by plaintiff herein (Rolark affidavits of Sept. 8, Sept. 25, and Sept. 30), and plaintiff's Statement of Material Facts as to Which There is No Genuine Issue, the meeting with Chairman Hampton on June 10, 1971, focused on allegations that United Way, UGF, and agencies such as the American Red Cross which benefited from the Campaign under United Way and UGF auspices were guilty of discriminatory practices and that there was an insufficient number of black persons on policy-making bodies within UGF and HWC. These conclusory charges were not factually documented. Chairman Hampton's affidavit and his letter of August

3, 1971, indicate that he did not take United Way's recognition of UGF as a "member in good standing" to be evidence that UGF was meeting federal nondiscrimination requirements but rather that he made direct requests to UGF and HWC officials for specific data as to the racial composition of policy-making bodies within these organizations and of the clientele served by agencies participating in the Combined Federal Campaign through UGF (Hampton affidavit, ¶ 8). The figures are substantial evidence that UGF and HWC accorded fair representation to both black and white communities in their policy-making bodies and that expenditures for services by agencies receiving UGF funding in fact benefited the black communities in the Washington Metropolitan area to a greater extent than a strict allocation according to population ratios would warrant. Plaintiff does not allege that it, at any time, supplied contrary figures to the Chairman. As for its complaints that exemptions from the Chairman's regulations had been granted to certain organizations, it failed to cite any instance in which a similarly situated organization, i. e., a federation of local health and welfare agencies, was granted any such exemption. Considering, then, both what plaintiff alleges it brought to the Chairman's attention by letter and at the June 10 meeting, and the data obtained by the Chairman from UGF and HWC, the Court finds that there was substantial evidence to support the Chairman's determination that plaintiff's discrimination charges were not sufficiently well-founded to warrant altering the arrangements for participa-

---

8. The Court has not discussed any rights to an adjudicative hearing which plaintiff might claim under the Administrative Procedure Act because plaintiff has cited no applicable statute which would require the Chairman's decision to be "on the record after opportunity for an agency hearing." 5 U.S.C. § 554.

9. Insofar as Chairman Hampton is acting pursuant to "authority of the government of the United States," his decisions would seem to be "agency action" for purposes of the substantial evidence rule. *See* definition of "agency," 5 U.S.C. § 701. For the scope of review under the substantial evidence standard, see Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966).

tion of local health and welfare agencies in the Washington Metropolitan area Combined Federal Campaign.

Therefore, on the basis of the pleadings and of the affidavits and exhibits filed in this action, it is by the Court this 24th day of November, 1972,

Ordered that summary judgment be, and the same hereby is, entered for the defendants on all counts alleged in the Complaint.